BARD-PARKER COMPANY, INC., Plaintiff, v. CRESCENT MANU-FACTURING COMPANY and Others, Defendants.

Supreme Court, Special Term, New York County, May 13, 1940.

*David M. Neuberger,* for the plaintiff.

*Hays, Podell & Shulman,* for the appearing defendants.

COLLINS, J. A permanent injunction is sought restraining the defendants from unfairly competing with the plaintiff. Not only do defendants deny the charge of unfair competition, but they assert affirmatively that it is the plaintiff who is the offender, and they, accordingly, counter with a demand for relief against the plaintiff. A temporary injunction was granted by Mr. Justice COHN and upheld (247 App. Div. 716, 717).

The plaintiff manufactures and distributes "Bard-Parker" detachable surgical blades invented and patented by its president, Morgan Parker. The patent has expired. These blades, distinguishable from the old solid scalpel, have acquired a world-wide reputation in the domain of surgical instruments. The plaintiff's reputation and good will are indisputable. From 1916 to 1939 it expended $238,771.23 in advertising "Bard-Parker" blades.

For a while one of the defendants, the non-appearing Crescent Manufacturing Company, and before that, its predecessor, an individual, performed certain services on the blades for the plaintiff, but the plaintiff did the rest of the work — in which a secret process

was applied — and the blades were known in the market and identifiable as the " Bard-Parker " instruments. The Crescent name was not overtly identified with the product. The plaintiff, having decided to do all the work in connection with the manufacture of the blades itself, terminated the association with the Crescent Manufacturing Company. Thereupon, the defendants projected the defendant Crescent Surgical Sales Company and competition with the plaintiff ensued.

Circulars were distributed, at least one by the first Crescent Company, and others by other defendants, or through their instrumentality, in which it was made to appear, by innuendo at least, that the defendants were selling the " Bard-Parker " blade. Such slogans as: " You Have Relied on Crescent Made Blades For Years," " The Blades You Have Always Used," and " The Only Time-Tested Surgeon's Blade," were employed. Their advertising stated that " Crescent surgeon's detachable blades were processed by us for the patentees under their name for 15 years." " * * * we can supply you with blades made of high grade steel and in all respects identical with the blade you have been using." Other legends and assertions of similar import were circularized. Besides, oral statements of like tenor were made. In addition, the plaintiff's style numbers were imitated confusingly. The central idea in all this was that the defendants were selling the identical article the trade had been purchasing from or as the " Bard-Parker " article.

In granting the injunction *pendente lite*, Mr. Justice COHN said: " * * * Moreover, the good will built up by plaintiff in the name ' Bard-Parker ' as related to the business of manufacturing and selling surgical knives and detachable blades belongs to the plaintiff and not to any other person or corporation employed by the plaintiff to aid in the manufacture or processing of plaintiff's merchandise.

" The good will of a business and the trade name of an article manufactured in the course of the operation of such business are the property of the one who owns or controls the business. This is so though the articles be manufactured in whole or in part by another (*Menendez* v. *Holt*, 128 U. S. 514, 520; *McLean* v. *Fleming*, 96 id. 245, 253; *Charles Broadway Rouss, Inc.*, v. *Winchester Co.*, 300 Fed. 706, 722; Nims on Unfair Competition [3d ed.], § 193).

" Facts somewhat similar to the case at bar were presented in an application for an injunction *pendente lite* made in this court in the case of *Coward Shoe Co., Inc.*, v. *Grossman, Inc.* (N. Y. L. J. June 23, 1930, p. 1605, affd., 230 App. Div. 834). The record on appeal in that case discloses that at Special Term the defendant Julius Grossman, Inc., who, with other manufacturers, had supplied

shoes for the Coward Shoe Co., Inc., was restrained, pending trial, from stating that it had decided to stop making the shoes under the name ' Coward ' and would henceforth sell them direct to the public. The contention of the plaintiff there that the good will of the Coward shoe was the property of Coward, the dealer and retailer, and not of Grossman, the manufacturer, was upheld by our appellate court.

" In a case of such character the public, unaware of the name of the manufacturer or servicing corporation of the branded article, buys relying on the dealer's skill, knowledge and judgment in ascertaining that the product which he markets possesses excellence of quality. The manufacturer who under these circumstances supplies a product or renders some service in connection with it for the dealer acquires no right to the trade name or good will of his employer. Nor has one who has rendered service in connection with an article for another the right to hold himself out as a successor to the business of the original dealer, either directly or indirectly. (*American Novelty & Mfg. Co.* v. *Manufacturing Electrical Novelty Co.*, 38 Misc. 450, 455; *Storey* v. *Excelsior Shook & Lumber Co., Inc.*, 198 App. Div. 505.)

" Upon the papers submitted I am of the view that the plaintiff is entitled to an injunction *pendente lite* restraining the answering defendants from representing in writing or orally that the Crescent Manufacturing Company made or made and supplied to the plaintiff the detachable surgical blades marketed by the plaintiff before January 1, 1934, known as Bard-Parker blades, or that the blades now made by the Crescent Manufacturing Company and sold by the Crescent Surgical Sales Company, Inc., are the same or identical with the detachable blades manufactured by the plaintiff."

To be sure, " the granting of a preliminary injunction on affidavits will not be regarded as *res adjudicata* when the case comes to be tried." (*Bomeisler* v. *Forster*, 10 App. Div. 43, 48; revd. on other grounds, 154 N. Y. 229; *Aberon Bakery Co., Inc.*, v. *Raimist*, 141 Misc. 774, 776; *Bannon* v. *Bannon*, 270 N. Y. 484.) Nonetheless, that Mr. Justice COHN correctly stated the law applicable to cases of this character is not challenged. The cases cited by him clearly establish the principle that one need not be the manufacturer of an article to be entitled to protection against piracy of the article's name and reputation. Otherwise any one who performed labor on an article for another could appropriate the good will and reputation of the article by the simple device of capitalizing the fact. More than that, I am satisfied that the facts adduced on the trial strengthen rather than weaken the plaintiff's position. The essential facts offered to sustain the application for temporary injunction have not been destroyed or impaired by the defendants' proofs.

The defendants cite a number of cases illustrating the rule that it does not constitute unfair competition to announce the employment of one who was theretofore engaged by another, and in that connection, to use the name of the other. In etching this parallel the defendants, I think, have failed to discern the dividing-line distinction. Under certain circumstances and in such a way that would not be deceptive, it might be permissible to say that A, who formerly worked for B, is now working for C; yet it would not be permissible for C to say, even indirectly, that his product was the same as that on which A worked for B. The latter stratagem of circumvention is abhorrent to the law of unfair competition.

It is obvious to me that the practice here indulged in was calculated to, and actually did, induce the impression that the Crescent blade is the "Bard-Parker" instrument.

It is difficult to perceive why the defendants do not proceed to establish a reputation and good will for their own product, based on the peculiar merits of that product, apart from any indirect claim of previous association with or relation to the plaintiff's product, unless by subtlety it is hoped to "cash-in" on the plaintiff's reputation and good will.

Unfair competition is a species of commercial hitch-hiking which the law finds offensive, and, therefore, prohibits. The law of unfair competition is but a reaffirmation of the rule of fair play. It aims to effect honesty among competitors by outlawing all attempts to trade on another's reputation — it gives the crop to the sower and not to the trespasser. In so doing it strives to protect the buying-public from deception. (*American Chain Co., Inc.*, v. *Carr Chain Works, Inc.*, 141 Misc. 303, 306–307; *Bengue* v. *American Pharmaceutical Co., Inc.*, 155 id. 602, 607.)

The defendants do not, as indeed they cannot, combat the general rules governing unfair competition cases as enunciated by Mr. Justice Cohn. Their insistence is that they are doing nothing beyond stating the truth. Equity, of course, "will not enjoin against telling the truth." (*Canal Co.* v. *Clark*, 80 U. S. 311, 327.) But a half-truth is not the truth. And what is more, the truth may be told in such a subtle and adroit way as to be misleading and deceptive. If the truth is so shaded or couched that it carries an inference or implication of deception, it is repugnant and, hence, assailable. When the truth is dressed to deceive, it will be stayed, just as falsity will be halted though regaled as truth. Both are equally offensive to the law and to business ethics.

If it were possible for these defendants to advertise the truth without tainting the truth or involving the truth deceptively, my inclination would be to modify the temporary injunction accord-

ingly. Such was the view of Mr. Justice UNTERMYER, who dissented from the affirmance of Mr. Justice COHN's temporary injunctive order, expressed as follows: " The order should be modified so as to permit the appellants truthfully to state their previous connection with the surgical blades heretofore sold by the plaintiff, and also to permit the appellants truthfully to state that the blades now sold by them are identical, except as to the source of origin of manufacture, with the blades now manufactured by the plaintiff. In other words, the order should be modified to permit the appellants to advertise the truth." (247 App. Div. 717.) Seemingly, the defendants asked the Appellate Division to modify the temporary order; seemingly, too, the majority rejected the proposal. While I am impressed by the dissent, yet inasmuch as the evidence sustains the plaintiff's position, I cannot do what the Appellate Division declined to do.

The temporary injunction will be perpetuated and an accounting ordered. The counterclaim is dismissed. Decision signed. Settle judgment accordingly.